IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                    )
EQUAL EMPLOYMENT OPPORTUNITY        )
COMMISSION,                         )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          Civil Action No. 01:09cv1099
                                    )
MOUNT VERNON HOLDINGS, LLC          )
d/b/a BEST WESTERN-MOUNT            )
VERNON,                             )
                                    )
          Defendant.                )
                                    )
```

FILED

JUL 2 0 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for
Summary Judgment. Plaintiff, the United States Equal Employment
Opportunity Commission, asserts that Defendant discriminated
against all non-Hispanic individuals because Defendant hired
Hispanic individuals for seven (7) of the eight (8) housekeeping
positions when it assumed ownership of the Best Western Mount
Vernon ("the Hotel") on April 24, 2007.

Plaintiff is the agency of the United States of America
charged with the administration, interpretation and enforcement
of Title VII and is expressly authorized to bring this claim by
Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-
5(f)(1) and (3). Defendant is an employer engaged in an industry
affecting commerce within the meaning of Sections 701(b), (g) and
(h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all

relevant times, Defendant has continuously conducted business in the Commonwealth of Virginia and the City of Alexandria and has continuously had at least fifteen (15) employees.

Defendant moves for summary judgment as to all claims asserted by the EEOC on behalf of Linda Hartless, Edna Hayden, Mayde Brooks and Thaneil Copeland (hereinafter "the EEOC Plaintiffs").

Prior to April 24, 2007, the Hotel was owned by MGE Hotel L.P. ("Previous Owners"). About every six (6) months, a representative from Best Western International ("BWI") makes an unannounced visit to the property to conduct a Quality Assurance Assessment ("QAA"). During the QAA, the Guest Rooms/Public Areas ("GRPA") are assessed for "guest sensitive" deficiencies in the rooms that are ready to rent. The maximum score on a QAA is 1000 points. Points are deducted for observed deficiencies. The minimum acceptable standard is 800.

During its QAA on October 12, 2006, the Hotel received a score of 633. The inspector observed many housekeeping and maintenance deficiencies including a number of burn stains from irons, peeling wall vinyl, mildewed wall vinyl, dirty night stands, broken or marked furniture, dirty carpets, dirty HVAC vents, soiled upholstery, discolored and stained floor file grout, stained toilet seat, excessive cobwebs, along with other problems.

Because the score was below the 800 point minimum, BWI place the Hotel on probation on October 13, 2006. Probation means that the property's membership status in the Best Western brand is in jeopardy. On December 13, 2006, the property received an overall rating of "2" by the Best Western Governor responsible for the territory in which the Hotel is located. Within this rating system, a "5" means that the property is commensurate with Best Western's standards and requirements and adds value to the brand while a "1" means that the property adds no value to the brand.

BWI re-inspected the Hotel on January 25, 2007. During the re-inspection, the inspector observed further deficiencies in the guest rooms that constituted "severe, guest sensitive deficiencies," including, but not limited to, hairs on the toilet, dirty HVAC vents, scuff marks on guest room doors, dirty carpet, dirty and used ovens, spillage on telephone face plate, and soiled upholstery.

As of February 2007, the Hotel was the seventh (7th) worst property of the BWI's North American membership. The Hotel ranked 2,343 out of a total of 2,350 Best Western brand properties. Based upon the Previous Owners' failures, BWI sent notice on February 12, 2007 that the BWI Board of Directors would consider cancellation of the Hotel's Best Western membership. If a property's membership is cancelled, it cannot conduct any business as a Best Western hotel. In addition, BWI de-activated

-3-

the Hotel's ability to accept reservations through the Best Western central on-line reservation system. On March 29, 2007, the BWI Board of Directors held a meeting to discuss the cancellation of the Hotel's Best Western membership. The Previous Owners and Defendant attended this meeting and begged the Board of Directors not to cancel the Hotel's membership.

The Previous Owners and Defendant executed the Purchase and Sale Agreement to sell the Hotel to Defendant on February 19, 2007. The parties closed the transaction on April 24, 2007 on which date Defendant because the owner of the Hotel. As a condition of the purchase of the Hotel, the Previous Owners were required to "[t]erminate the employment of all existing employees immediately prior to the Closing with payment in full of all unpaid wages, benefits, and accrued vacation . . ." Defendant retained its discretion to re-hire any of the employees who worked at the Hotel prior to April 24, 2007. Defendant delegated its authority and discretion to hire staff to the General Manager, Kathie Vance.

Between April 4 and 24, 2007, Ms. Vance set up a temporary office in one of the guest rooms in the Hotel. She worked at the Hotel to evaluate and prioritize the necessary repairs and improvements to the Hotel. During this observation period, Ms. Vance observed the staff to see how they performed their job. Ms. Vance met with the Hotel's staff sometime during this

-4-

observational period. At this meeting, Ms. Vance introduced
herself and informed the staff that she worked for the new owners
of the Hotel. She indicated that all employees had to submit
applications to be considered for re-hire by Defendant.

Ms. Ashe a supervisor under the Previous Owners, terminated
Mayde Brooks, one of the EEOC Plaintiffs, prior to the change in
ownership of the Hotel. Ms. Brooks was the Housekeeping
Supervisor when she was employed by the Previous Owners. Ms.
Brooks accompanied the inspector during the October 2006 and
January 2007 QAAs. Ms. Ashe issued and signed, and Ms. Brooks
acknowledged, an Employee Warning Notice dated April 18, 2007.

Pursuant to the Purchase and Sale Agreement, the Previous
Owners terminated the EEOC Plaintiffs on April 24, 2007. As of
April 24, 2007, Ms. Vance hired employees for all available staff
positions in all of the department at the Hotel, including
housekeeping, kitchen, front desk and maintenance.

She hired the following twenty (20) individuals: (1) Marcus
Reid (whose national origin is American and who is not Hispanic)
as the Operations Manager; (2) Elizabeth Hosp (whose national
origin is Hispanic) as the Housekeeping Supervisor; (3) Abdul
Khan (whose national origin is Pakistani and who is not Hispanic)
as a Front Desk Manager; (4) Bernie Ashe (whose national origin
is American and who is not Hispanic)as a Guest Service Agent
(front desk clerk); (5) Aristides Ayala (whose national origin is

Hispanic) as maintenance staff; (6) Marina Beltran (whose national origin is Hispanic) as a housekeeper; (7) Victor Bradford (whose national origin is American and who is not Hispanic) as a front desk agent; (8) Blanca Lesbia Castro (whose national origin is Hispanic) as a housekeeper; (9) Marina Flores (whose national origin is Hispanic) as a housekeeper; (10) Yamileth Gutierrez (whose national origin is Hispanic) as a housekeeper; (11) Gail Jamison (whose national origin is American and who is not Hispanic) as a front desk clerk; (12) Rasheen Jamison (whose national origin is American and who is not Hispanic) as maintenance staff; (13) Daniel Martinez (whose national origin is Hispanic) for maintenance/clean up; (14) Belki Matamoros (whose national origin is Hispanic) as a housekeeper; (15) Esmeralda Melendez (whose national origin is Hispanic) as a housekeeper; (16) Virginia Morgan (whose national origin is Hispanic) as a housekeeper; (17) Ngoan Nguyen (whose national origin is Vietnamese) as breakfast hostess; (18) Daxa Patel (whose national origin is Indian and who is not Hispanic); (19) Teri Peters (whose national origin is American and who is not Hispanic) as a housekeeper; and (20) Carlos Villatoro (whose national origin is Hispanic) as a front desk clerk.

All of the twenty individuals hired by Ms. Vance submitted an application for employment. Of these twenty individuals, ten of them worked at the Hotel prior to the April 24, 2007 closing

date: Ms. Ashe, Ms. Beltran, Mr. Bradford, Ms. Castro, Ms. Flores, Ms. Gutierrez, Ms. Matamoros, Ms. Melendez, Ms. Nguyen and Ms. Peters. Defendant did not re-hire the EEOC Plaintiffs.

On September 21, 2007, the Hotel's listing on the Best Western reservation system was changed to unrestricted. On May 28, 2008, the Hotel received a GRPA score of 948 and receive an "Excellent Housekeeping Award" and a Certificate of Recognition. On November 30, 2009, the Hotel received a GRPA Assessment score of 980, and received an "Excellent Housekeeping Award" and a Certificate of Recognition.

EEOC Plaintiff Brooks did not work between April 18, 2007 and August 25, 2008. EEOC Plaintiff Hartless has not found permanent employment since April 2007. EEOC Plaintiff Hayden did not seek employment between April 2007 and sometime in the Fall of 2008, when she started at Mount Vernon Hospital. EEOC Plaintiff Copeland did not work between April 2007 and April 2008. Mr. Copeland did not work as a housekeeper at the Hotel. Mr. Copeland did not perform all of the duties of a housekeeper when he worked at the Hotel. He did not clean the bathrooms or make the beds.

There is no genuine dispute as to any material facts in this case. There is no dispute that the Hotel was generally in very poor condition. The Hotel was on the brink of losing the "Best Western" membership because of two consecutive failed

inspections. After appealing to the BWI Board of Directors and promising a $5 million renovation of the Hotel that would gut the structure to its concrete pillars, Defendant purchased the Hotel from the Previous Owners and obtained ownership of the Hotel on April 24, 2007.

Pursuant to the Agreement, the existing employees at the Hotel were terminated on April 24, 2007. Defendant had sold discretion to re-hire any existing staff members. There is no dispute that Ms. Vance informed all existing employees, including the EEOC Plaintiffs, that they had to submit an application if they wanted to be considered for re-employment after April 24, 2007.

On April 24, 2007, Ms. Vance hired twenty employees for all available positions at the Hotel, including a Director of Operations, Front Desk Manager, and all staff members in the other departments, such as Housekeeping, Breakfast, Maintenance and Front Desk. Of the twenty employees hired by Ms. Vance as of April 24, 2007, there were nine individuals who are not of Hispanic national origin. Ten of the employees were re-hired from the Previous Owners' staff and, of those, four were not Hispanic. All of the individuals who were hired by Ms. Vance had submitted applications for employment.

Plaintiff focuses its claims on the hiring decisions of Ms. Vance in the Housekeeping department. Because seven of the eight

-8-

housekeepers are Hispanic, Plaintiff asserts that General Manager
had a "preference" for hiring Hispanic individuals for the
housekeeping positions and illegally discriminated against the
EEOC Plaintiffs, who are not Hispanic.

Plaintiff does not have any direct evidence of
discrimination. Plaintiff also cannot prove discrimination based
on circumstantial evidence. It cannot establish a prima facie
case of discrimination with respect to each EEOC Plaintiff.
Moreover, there is no basis for inferring any discriminatory
preference in hiring in favor of Hispanic individuals. The same
manager who hired the housekeepers also hired individuals of
various national origins at the same time for other positions at
the Hotel. Defendant has illustrated that the quality of the
applicant pool by April 24, 2007 dictated its initial hiring
decisions in the Housekeeping department.

Even if Plaintiff could establish a prima facie case for the
EEOC Plaintiffs, the evidence shows that Defendant had
legitimate, non-discriminatory reasons for not hiring them.
Defendant had justified reservations about re-hiring all the
existing staff. While a number of factors, including the Previous
Owners' neglect, contributed to the deterioration of the Hotel,
the general indifference of the staff and the lack of leadership
at the Hotel was an important factor. To turn the property
around, a physical renovation was simply not enough. Defendant

-9-

had to completely make over the attitude of each department manager and all of the employees. It was not acceptable to Defendant that a guest room might feel "dirty" even though it had been cleaned, as one former assistant housekeeping supervisor stated.

During Ms. Vance's observational period, she observed the job performance of the Previous Owners' employees, including the EEOC Plaintiffs. Based upon her observations and her interactions with the existing staff, she selected only those individuals who demonstrated the attitude and willingness to perform their jobs at the level necessary to turn the Hotel into a profitable business. In addition, based upon the applications that she received, Ms. Vance hired new employees for some of the positions including a new Housekeeping Supervisor and some of the housekeepers. After five months, since September 2007, the Hotel has consistently earned "Excellence in Housekeeping" awards. Plaintiff has not produced any evidence to prove that Defendant's legitimate, non-discriminatory reasons are pretext for discrimination.

Summary judgment is appropriate where, after adequate time for discovery, a party fails to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A

-10-

trial judge has an affirmative obligation "to prevent factually unsupported claims and defenses from proceeding to trial." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987)(quotation and citation omitted).

It is well-settled that in bringing an employment discrimination action, a plaintiff may prove the existence of unlawful discrimination in one of two ways: (1) direct evidence of discrimination or (2) indirect evidence "whose cumulative probative force . . . would suffice under the controlling standard to support as a reasonable probability the inference that but for the plaintiff's [national origin]," the EEOC Plaintiffs would have been hired. <u>Holmes v. Bevilacqua</u>, 794 F.2d 142, 146 (4th Cir. 1986)(en banc). Whether direct or circumstantial, Plaintiff's evidence must be sufficient "for a reasonable jury to conclude, by a preponderance of the evidence, that . . . national origin was a motivating factor for any employment practice." <u>McNeal v. Montgomery County</u>, 307 Fed. App'x 766, 775 (4th Cir. Jan. 20, 2009)(citing and quoting <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004)(en banc))(quotations omitted). Plaintiff has not met its burden under either approach.

In its Complaint, Plaintiff alleges that Ms. Vance "expressed her preference for hiring Hispanics as housekeepers." In discovery, Plaintiff elaborated that Ms. Vance "told Bernie

Ashe that she planned on keeping the 'Hispanic Housekeepers'" and that Ms. Vance told Esmeralda Melendez (a former housekeeper) that she "liked to work with Hispanics" and that "Hispanics are good workers." Plaintiff further asserts that Ms. Vance expressed a preference for hiring Hispanic housekeepers by hiring Hispanic housekeepers.

During her deposition, Ms. Ashe nullified the "direct evidence" of discrimination that Plaintiff attributes to Ms. Ashe's conversation with Ms. Vance. Ms. Ashe repeatedly testified during questioning by counsel for both parties that neither she nor Ms. Vance intended any discriminatory intent or preference by referring to a group of housekeepers who are Hispanic as the "Hispanic Housekeepers." When Plaintiff's counsel asked Ms. Ashe for clarification, Ms. Ashe testified that Ms. Vance did not discriminate in favor of Hispanic individuals.

Likewise, Ms. Melendez, in her deposition, clearly contradicted any assertion that Ms. Vance directly stated a "preference" for hiring Hispanic workers. Ms. Melendez testified that she could not remember the exact words used by Ms. Vance, but that it was her understanding that Ms. Vance thought Hispanics were good workers. Ms. Melendez also testified that in the same conversation, Ms. Vance told her that Frank Murphy, the interim General Manager for the Previous Owners) had given the Hispanics a good reference. When Ms. Melendez was asked whether

Ms. Vance treated Hispanic workers differently from non-Hispanic workers, Ms. Melendez pointed out that Ms. Vance has also hired some of the American and Vietnamese employees.

Without any direct evidence, Plaintiff must rely on circumstantial evidence to establish its claim of discrimination based upon national origin. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004), cert. denied, 543 U.S. 813 (2004). Under McDonnell Douglas burden-shifting model, Plaintiff must first establish a prima facie case of discrimination with respect to each EEOC Plaintiff. McDonnell Douglas, 411 U.S. at 802. It is well-settled that a "plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case of discrimination." Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004)(citing Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988)), cert. denied, 543 U.S. 876 (2004). Plaintiff is required to provide "circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996).

If Plaintiff establishes a prima facie case, the burden shift to Defendant to articulate a legitimate, non-discriminatory reason for the action to rebut the inference of discrimination. McDonnell Douglas, 411 U.S. at 802. The employer's burden is not

-13-

onerous, as explained by the Fourth Circuit:

> In this regard, the Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination so that when an employer articulates a reason for [its treatment of the plaintiff] not forbidden by law, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the employment decision.

DeJarnette v. Corning, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (internal quotations and citations omitted).

If the employer articulates a legitimate, non-discriminatory reason for its conduct, "the presumption of unlawful discrimination created by the prima facie case drops out of the picture and the burden shifts back to the EEOC to prove that the given reason was just a pretext for discrimination." Mackey, 360 F.3d at 468 (citing Evans, 80 F.3d at 959). Thus, after reviewing the record as a whole, if this Court concludes that a reasonable jury could not return a verdict for Plaintiff, summary judgment for Defendant is warranted and proper. Evans, 80 F.3d at 959. Plaintiff has not introduced sufficient evidence that shows that Defendant's legitimate, non-discriminatory reasons are pretext.

The framework for proving a prima facie case of discriminatory failure to hire under Title VII is well-settled. By a preponderance of the evidence, Plaintiff must prove that each EEOC Plaintiff: "(1) is a member of a protected group; (2) [he or] she applied for the position in question; (3) [he or] she

-14-

was qualified for the position; (4) she was rejected from the position under circumstances giving rise to an inference of unlawful discrimination." Spain v. Virginia Common Univ., 2009 U.S. Dist. LEXIS 70524, at *20 (E.D. Va. Aug. 11, 2009). With respect to the third element, it is the employer's prerogative, not the employee', to establish the relevant criteria and expectations for continued employment. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005). The employee cannot use his own judgment to evaluate his qualifications. Id. As held by the Fourth Circuit, the Court will leave the employer as the judge of the employee's job performance. Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997).

In this discrimination claim, Plaintiff asserts that the EEOC Plaintiffs (i.e., Brooks, Hartless, Hayden and Copeland) are not Hispanic and thus "members of a protected group."

Plaintiff cannot establish the third or fourth elements of the prima facie case for each EEOC Plaintiff because they were not satisfactorily performing their jobs while they worked for the Previous Owners.

The prima facie case as to Ms. Brooks fails because she was not qualified for the position of Housekeeping Supervisor. As the Housekeeping Supervisor, Ms. Brooks would have been responsible for, among other things, ensuring that the housekeeping staff

-15-

properly cleaned and prepared the guest rooms in compliance with certain standards. When a housekeeper is finished cleaning a room, the Housekeeping Supervisor is supposed to check the room to make sure that it is ready to rent.

The evidence establishes that Ms. Brooks was not adequately performing her job. During her employment, the Housekeeping Department's lack of cleanliness contributed to the Hotel's general failure of the QAAs. Specifically, in October 2006, 46 points were deducted for housekeeping issues. The point deduction increased to 67 in January 2007 for "severe, guest sensitive deficiencies," such as hairs on the toilet, dirty HVAC vents, dirty vents, dirty carpets and used ovens, spillage on telephone face plates, and soiled upholstery.

As described by Ms. Ashe (who is not Hispanic), Ms. Brooks had a poor work attitude and poor work ethics. The lack of cleanliness in the guest rooms on a daily basis, such as dust on pictures and on top of lamp shades, reflected upon Ms. Brooks' poor performance. As Ms. Ashe explains, the Housekeeping department should not have had to work furiously to clean the rooms in preparation for an inspection if the rooms were as clean as they should be. Ms. Ashe repeatedly received complaints from guest about unclean rooms. Ms. Ashe also discovered that the housekeepers used shortcuts, such as not removing the linens from one bed if there was only one guest in the room. Ms. Ashe

ultimately fired Ms. Brooks for violating security protocol -
leaving a guest room unlocked and unsecure. Based upon her
observations, Ms. Ashe testified that she would not have re-hired
Ms. Brooks.

Ms. Ashe also testified that Ms. Brooks had been written up
by interim general manager Frank Murphy on March 21, 2007 for
attendance issues. Ms. Brooks was absent from work without
calling her supervisor on January 5 and 22, February 14, and
March 9, 2007. In addition, while she called in, she did not come
to work on February 21, March 16 and 19, 2007. Mr. Murphy
considered these absences excessive.

Ms. Ashe's deposition testimony reinforces Ms. Vance's
observations about Ms. Brooks' work performance. Ms. Vance
testified that during the time she observed the Hotel's staff,
she concluded that Ms. Brooks did not perform her job very well
because of the general lack of cleanliness at the Hotel.
Defendant reasonably held Ms. Brooks accountable for the Hotel's
lack of cleanliness because she was the Housekeeping Supervisor,
just as Defendant considered the former Maintenance Supervisor
(who was also not considered for re-hire) accountable for the
myriad of maintenance issues at the Hotel. Like Ms. Ashe, Ms.
Vance also observed that Ms. Brooks did not exhibit a strong
commitment to keeping the Hotel clean. As Ms. Melendez, an
assistant housekeeping supervisor to Ms. Brooks, testified, Ms.

Brooks was more interested in leaving early and so she rushed the housekeepers, especially on paydays. Even if Ms. Brooks had applied for the job, Ms. Vance was not going to re-hire Ms. Brooks, because she thought that Ms. Brooks demonstrated an "apparent lack of interest in her job."

Mr. Copeland worked as a houseman at the Hotel prior to the change in ownership. While a housekeeper and houseman may work in the Housekeeping department, their responsibilities are different. Housekeepers are responsible for cleaning the guest rooms while the houseman cleans the common areas and the outside.

Mr. Copeland's own testimony demonstrates the differences between the two positions. As a houseman, he collected laundry and took it to the laundry room (where someone else washed the linens), vacuumed the hallways and other public areas, patrolled and cleaned the outside, and helped with maintenance issues. He admitted that he did not clean the bathrooms, make the beds, or perform any of the other duties of a housekeeper.

According to Ms. Ashe, Mr. Copeland did not clean the common areas very well. Based upon her observations, Mr. Copeland was not qualified to be a housekeeper. She would not have re-hired him. Because he was not qualified to be a housekeeper, no discriminatory inference should be drawn from Defendant's failure to hire him.

Ms. Hartless worked as a housekeeper at the Hotel when it

was owned by the Previous Owners. However, she was not adequately performing her job. Ms. Ashe testified that Ms. Hartless caused "chaos" and started trouble in the workplace. According to Ms. Ashe, Ms. Hartless worked only when someone was watching her. Ms. Ashe also testified that Ms. Hartless was more inclined to sit and do nothing, even if the housekeepers were short-staffed. Ms. Ashe specifically recalled seeing Ms. Hartless sitting on a bed in a guest room watching television and not cleaning the room.

Ms. Ashe's testimony corroborates Ms. Vance's observations of Ms. Hartless. When Ms. Vance observed the staff, she met Ms. Hartless in the laundry room where Ms. Hartless was drinking coffee, eating and talking. When Ms. Vance saw Ms. Hartless during the day, she concluded that Ms. Hartless was not focused on her work. Because Ms. Hartless was not adequately performing her job, it is reasonable to conclude that she was not qualified for the position.

Ms. Hayden was also a housekeeper at the Hotel employed by the Previous Owners. She was not adequately performing her job. According to Ms. Ashe's observations, Ms. Hayden was not working as hard or as much as she used to and she was sometimes disrespectful to guests. Ms. Hayden was suspended for not properly performing her job. All of this gave Ms. Vance reason to consider Ms. Hayden unqualified for the position.

Even if Plaintiff did establish a prima facie case for each

EEOC Plaintiff, Plaintiff cannot refute Defendant's legitimate, non-discriminatory reasons for not hiring Ms. Brooks, Mr. Copeland, Ms. Hartless and Ms. Hayden.

Beyond the fact that they were not qualified based on their experience and job performance, Defendant also had strong reservations about hiring any of the individuals from the former staff. However, there was a business need to hire some of the former staff who knew the Hotel's operations to ensure minimal operational disruptions during the transition in ownership. Thus, after almost three weeks of observations, Ms. Vance hired applicants who demonstrated the qualities that Defendant was interested in: a commitment to working hard, a good attitude, an eagerness to change and a willingness to adapt.

While previous experience mattered, these subjective criteria were important to Defendant and were properly considered. See Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995) (holding that the employer properly considered objective and subjective factors, such as good interpersonal skills and ability to lead a team). The consideration of subjective factors can support a finding that Defendants had a legitimate, nondiscriminatory reason for not hiring the EEOC Plaintiffs. See Holmes v. Bevilacqua, 794 F.2d 142, 147-48 (4th Cir. 1986)(en banc)("the mere fact that subjective criteria are involved in the reason articulated by an

employer does not prevent according it such sufficient rebuttal weight to dispel the inference of discrimination raised by the prima facie case"); Love v. The Alamance County Bd. of Educ., 757 F.2d 1504, 1507 (4th Cir. 1985)(holding same); Page v. Bolger, 645 F.2d 227, 230 (4th Cir. 1981)(holding same), cert. denied, 454 U.S. 892 (1981).

Along with the renovations to the building, Defendant had to reverse the general apathy of the staff that had existed for years and institute strong leadership to guide the staff towards a more profitable business model. Before the change in ownership, the Hotel's operations were "a complete circus" and "completely lawless." Mr. Patel, a partner in Defendant MVH and a former Chairman of the Board of BWI, observed no leadership at the Hotel. "People did whatever they wanted. They came whenever they wanted and left whenever they wanted. If someone wanted to be at the front desk, they would stand behind the front desk. If they didn't, there wouldn't be anyone at the front desk."

Ms. Vance did not discriminate against non-Hispanics when she made her hiring decisions. As a business person, she balanced the need for competent staff and diversity. During the time she observed the Hotel's staff, Ms. Vance saw who was doing the work and who was not. She was able to identify the most productive employees and ultimately hired them.

Plaintiff cannot prove the elements for a prima facie case

for each EEOC Plaintiff and because Defendant had legitimate, non-discriminatory reasons for not hiring the EEOC Plaintiffs, Defendant is entitled to summary judgment as a matter of law on the national origin discrimination claim. An appropriate order shall issue.

/s/

Claude M. Hilton
United States District Judge

Alexandria, Virginia
July 20, 2010